CLOSED
FILED
NOV 26 2008

**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID DUNN,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Case No. 07-12748

JUDGE PAUL D. BORMAN
MAGISTRATE JUDGE DONALD A. SCHEER

## OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION IN FAVOR OF SUMMARY JUDGMENT, AND (3) DISMISSING THE ACTION

Before the Court is Plaintiff David Dunn's Objection to Magistrate Judge Donald A. Scheer's June 10, 2008 Report and Recommendation in favor of granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment. After requesting a fourteen day extension to file objections to the Report and Recommendation on June 17, 2008,[1] Petitioner filed his objection on June 30, 2008. Defendant submitted a response on July 14, 2008, and the case was reasssigned from District Judge Paul V. Gadola to this Court on September 3, 2008.

The Court now reviews the Objection, the Report and Recommendation, and pertinent parts of the record *de novo* pursuant to 28 U.S.C. § 636(b).

---

[1] District Judge Gadola did not rule on Plaintiff's motion for an extension. Therefore, the Court treats Plaintiff's objection as timely.

1

I.  BACKGROUND

Because Plaintiff does not object to the facts or procedural history as summarized by Magistrate Judge Scheer, the Court adopts the relevant portion of the Report and Recommendation here:

> Plaintiff filed an application for Social Security Supplemental Security Income [("SSI")] benefits on July 10, 1998, alleging that he had become disabled and unable to work since January 28, 1998, at age 37, due to severe joint pain and emotional difficulties. Benefits were denied by the Social Security Administration. A requested de novo hearing was held on March 2, 2005,[2] before Administrative Law Judge [("ALJ")] Neil White. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of sedentary work providing a sit-stand option. The ALJ restricted claimant from complex jobs involving repetitive neck extension, constant reaching or working above chest level. The Law Judge further limited Plaintiff to jobs that did not require any kneeling, squatting, climbing or crawling. The ALJ determined that Plaintiff was capable of simple job assignments. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.
>
> Plaintiff was 44 years old at the time of the most recent administrative hearing (TR 22, 73). He had been graduated from high school, and had been employed during the relevant past as a free lance photographer, artist and art supply seller (TR 85, 806). Claimant stopped working in January 1998, due to chronic joint pain, headaches, confusion, forgetfulness and vision problems (TR 81, 807). At the time of the most recent hearing, he had no income, except for state welfare benefits, and he lived with some friends[3] (TR 807, 814).
>
> Claimant testified that he could not work because of constant pain and chronic fatigue (TR 807). He stated that the pain moves from his back to his ear to his right eye (TR 808). The claimant was unable to perform any yard or housework (TR 809). Pain medications proved ineffective, and he had to sit with his legs elevated above waist level to get any relief (TR 811).
>
> A Vocational Expert, Mary Williams, classified Plaintiff's past photography

---

[2] The Appeals Council remanded the case twice for further administrative proceedings to obtain additional medical evidence concerning claimant's orthopedic and mental disorders (TR 446-449, 480-483).

[3] Plaintiff settled a personal injury action for ninety thousand dollars following a January 1998, automobile accident (TR 815).

2

work as light to medium, skilled activity (TR 815). The witness testified that, if claimant were capable of sedentary work, there were numerous unskilled inspection, surveillance monitor and information clerk positions that he could perform with minimal vocational adjustment (TR 815). These jobs were not considered complex. They provided a sit-stand option, and did not involve any kneeling, squatting, crawling, repetitive reaching or climbing. They did not require working above chest level or prolonged neck extension (TR 816). Plaintiff would be permitted to take one day off a month and still remained employed (TR 817).

(Rep. & Rec. Dkt. No. 18, 1-3).

## II. ANALYSIS

### A. Legal Standard

Where, as here, a magistrate judge has issued a report and recommendation and a party files timely objections to it, the district court conducts a *de novo* review of those parts of the report and recommendation to which the party objects. 28 U.S.C. 636(b)(1).

This Court has jurisdiction to review the Commissioner's denial of Plaintiff's disability benefits. *See* 42 U.S.C. § 405(g). But in reviewing that decision, the Court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the Comissioner's decision is limited to an inquiry into whether his findings were supported by substantial evidence and whether he employed the proper legal standards in reaching his conclusion. *Brainard v. Sec'y of Health and Human Servs,*, 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Studaway v. Sec'y of Health and Human Servs.*, 815 F.2d

1074, 1076 (6th Cir. 1987).

B. **Evaluation of Plaintiff's Disability Claim**

The Commissioner evaluates disability claims using a five-step sequential process. 20 C.F.R. § 404.1520. Although the burden of proof is on the claimant through the first four steps of the process, if the fifth step is reached without a finding that the claimant is not disabled, then the burden shifts to the Commissioner. *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994). The five steps are as follows:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
>
> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the [Commissioner] reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the [Commissioner] considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Id.* (citing 20 C.F.R. § 404.1520 (1982)).

In this case, the ALJ first determined that Plaintiff was not engaged in substantial gainful activity since January 1998. (Tr. 33). The ALJ then found that Plaintiff suffered from several "severe" impairments, including somatoform disorder and personality disorder but that none of them

4

met or medically equal the requirements in Appendix 1, Subpart P, Regulation No. 4. (*Id.*). Next, the ALJ found that Plaintiff did not have the residual functioning capacity ("RFC")[4] to perform his past relevant work. Once the ALJ made that determination, the burden shifted to the Commissioner to show that Plaintiff possesses the capacity to perform jobs that are available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *see also Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

For the Commissioner to meet its burden under the fifth step, the ALJ must make "'a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.'" *Varley*, 820 F.2d at 779 (6th Cir. 1987) (alterations in original)(quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (alterations in original)(quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)(additional citations omitted). Thus, Plaintiff contends that the issue is whether the ALJ's hypothetical question accurately depicted Plaintiff's impairments.

The ALJ posed the following hypothetical to the vocational expert: "Let's assume we have a person the age of [Plaintiff], identical vocational and educational background. Assume that he has the following limitation. Need a sit/stand option, 10 pound lifting limitation. . . . With those limitations, do jobs exist that such person could perform?" (Tr. 815). The vocational expert replied

---

[4] According to the ALJ, Plaintff has the following RFC: "a restricted range of sedentary work with a sit/stand option. The claimant cannot perform work that requires work above the chest level; no repetitive extension or kneeling; no prolonged neck extension; no kneeling squatting, crawling; and no complex tasks." (Tr. 33).

"Yes," and explained that an example would be in the sedentary category, including an inspector, a surveillance system monitor, and information clerk. *Id.* Then, the ALJ asked whether, in addition to the limitations listed above, the vocational expert's opinion would change if the hypothetical person could perform no "work above the chest level, no repetitive extending or reaching, no prolonged neck extension and *no complex tasks*, no kneeling, squatting, crawling, or climbing." *Id.* at 816. The vocational expert replied that it would not. *Id.* (emphasis added). The ALJ's determination of Plaintiff's RFC is, in substance, the same as both parts of the hypothetical listed above.

### C. Plaintiff's Objection

Plaintiff objects to Magistrate Judge Scheer's Report and Recommendation, arguing that Magistrate Judge Scheer inadequately addressed one of his two primary arguments in his Motion for Summary Judgment—that the hypothetical and resultant RFC failed to describe the claimant's non-exertional, emotional impairments. Specifically, Plaintiff argues that the limitation in the RFC and hypothetical to "no complex tasks" does not capture the ALJ's undisputed finding that Plaintiff suffered from a "severe" personality disorder. He further argues that since the ALJ improperly formulated the RFC and the hypothetical, the Court should remand the case to the ALJ for a new hearing. The Court does not agree.

First, it is important to note that a finding of a "severe" impairment at step two of the disability determination process does not carry the same meaning as it otherwise would in ordinary parlance. *See Griffeth v. Comm'r. of Soc. Sec.*, 217 Fed. Appx. 425, 428 (6th Cir. 2007) (unpublished). As defined by the regulations, a "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to

do basic work activities." 20 C.F.R. § 404.1520(c). Courts, however, liberally construe the phrase "significantly limits" in favor of claimants. *Griffeth*, 217 Fed. Appx. at 428. If the Commissioner rates the degree of limitation as none or mild, then the Commissioner will generally conclude that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d). Therefore, the second step of the sequential analysis is the means by which the Commissioner screens out totally groundless claims. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). In fact, the Sixth Circuit has deemed step two of the disability determination process as nothing more than a "*de minimis* hurdle." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted).

Also noteworthy is that "[a] claimaint's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 U.S. Dist. LEXIS 16606, at *13 (E.D. Mich. July 14, 2004). Likewise, just because the ALJ determines that an impairment is "severe" at the step two, it does not mean that the impairment must be mentioned in the hypothetical. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Rather, a hypothetical question need only reference a claimant's limitations—what a claimant can and cannot do, not provide a listing of all the claimant's medical conditions. *Id.* (citing *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001)).

In the present case, it is undisputed that in the second step of the sequential analysis, the ALJ found that Plaintiff suffered from personality disorder considered "severe" under the regulations. In formulating Plaintiff's RFC and corresponding hypothetical, the ALJ focused primarily on the consultative evaluation provided by Dr. Margaret Cappone, Ph.D., a licensed psychologist, and

Vivian Burke, M.A., a limited licensed psychologist ("LLP"). The ALJ noted Dr. Cappone's diagnoses of "undifferentiated somatoform disorder, pain disorder associated with both psychological factors and general medical condition," and a secondary diagnosis of "personality disorder, not otherwise specified, with narcissistic and historic traits." (Tr. 31). Dr. Cappone rated Plaintiff's global assessment of functioning at fifty-three, indicating moderate symptoms affecting his ability to function.

The ALJ took issue with several parts of Dr. Cappone's review. First, while Dr. Cappone reported that she easily established a rapport with Plaintiff and that Plaintiff reported no difficulty with family and friends, she nonetheless noted that Plaintiff may have a slight impairment of his ability to relate to co-workers and supervisors. Second, the ALJ found that "Dr. Cappone's conclusion that [Plaintiff's] global assessment of functioning reveals moderate impairments is not consistent with her narrative[,] which indicates no impairments of his abilities to maintain concentration, persistence and pace and only slight impairments of his ability to maintain social functioning, and perform activities of daily living." (*Id.* 32). Nevertheless, in giving Plaintiff the benefit of the doubt, the ALJ found that Plaintiff has (1) a mild impairment in his ability to maintain social functioning; (2) a mild impairment in his ability to perform activities of daily living; and (3) "at best" a moderate impairment of his abilities to maintain concentration, persistence, and pace. The ALJ, however, did not elaborate upon these findings, including the extent to which they limit Plaintiff, except for stating in the RFC and the hypothetical that Plaintiff is limited to "no complex tasks."

Nonetheless, the Court finds, as did the magistrate judge, that the medical evidence in the record supports the ALJ's formulation of Plaintiff's RFC and hypothetical question.

After determining that Plaintiff was not significantly limited in twelve out of twenty mental work-related abilities and moderately limited in the remaining eight, the consultative psychologist for the state agency, Dr. Bruce Dayton, Ph.D., determined that Plaintiff "retains the capacity to perform *simple tasks* on a sustained basis." (Tr. 149–151) (emphasis added). Since the ALJ included the limitation "no complex tasks" in the RFC and hypothetical question, the ALJ properly considered Dr. Dayton's limitation of only "simple tasks on a sustained basis."

In addition, Dr. Cappone made several statements that are properly reflected in the RFC and hypothetical. First, in response to the question, "'[i]s ability to understand, remember, and carry out instructions affected by the impairment?'" Dr. Cappone stated that "there does not appear to be any restrictions in this area." (Tr. 422). Likewise, when asked, "[i]s ability to respond appropriately to supervision, co-workers, and pressures in a work setting affected by the impairment?" Dr. Capone responded that "there does not appear to be significant restrictions in this area." (*Id.*).

Finally, on December 21, 2004, Vivian Burke, M.A., LLP completed a Medical Source Statement of Ability to Do Work-Related Activites (Mental). (Tr. 42). She opined that Plaintiff should have no issues interacting with the public, supervisors, or co-workers. (*Id.*). She also noted, though, that Plaintiff may have a *slight* limitation in responding appropriately to work pressures in a usual work setting and to changes in a routine work setting and that Plaintiff may develop some somatic complaints when confronted by work pressures and changes in the work setting that may negatively impact his ability to respond appropriately. (*Id.*). These restrictions are not significant and regardless, the limitation of "no complex tasks" seems to adequately account for them.

Because the physicians of record did not impose any serious functional limitations other than the "no complex tasks" restriction, the Court finds no error in the ALJ's formulation of the RFC and

the hypothetical posed to the vocational expert.

### III. CONCLUSION

For these reasons, the Court:

(1) **ADOPTS** the Magistrate Judges's Report and Recommendation granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment;

(2) **DENIES** Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Dkt. No. 18); and

(3) **DISMISSES** the action **WITH PREJUDICE**.

**SO ORDERED.**

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED: NOV 2 6 2008
Detroit, MI